UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RENEE ELIZABETH THOMPSON,

                     Plaintiff,        13-CV-0350(MAT)

       v.                                **DECISION**
                                                     **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                     Defendant.
_____

## INTRODUCTION

Renee Elizabeth Thompson, ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##12, 13.

## BACKGROUND

Plaintiff protectively filed an application for SSI on August 10, 2009, alleging disability beginning July 28, 2009 due to hiparthritis, bulging and slipped discs, depression, anxiety, and bursitis.[1] T.139-46,172, 187-88. Her initial application was

---

[1] Plaintiff alleged depression and anxiety in her SSI application, however a State Agency review psychiatrist concluded that the evidence failed to establish the existence of a severe mental impairment, and the ALJ found these impairments to be non-severe. T. 30. Further, her pending motion

denied, and a hearing followed before Administrative Law Judge ("ALJ") William M. Weir in Buffalo, New York on July 26, 2011. T. 53-77, 79-84, 86. Plaintiff, who appeared with counsel, testified at the hearing.

In applying the required five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since August 10, 2009; (2) she had the severe impairments of hip pain, trochanteric bursitis, and degenerative disc disease; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1, and that she retained the residual functional capacity ("RFC") to perform the full range of sedentary work; (4) Plaintiff could not perform her past relevant work; and (5) there was other work that existed in significant numbers in the national economy that Plaintiff could perform. T. 26-33.

The ALJ's determination that Plaintiff was not disabled under the Act was issued on December 21, 2011, and became the final decision of the Commissioner when the Appeals Council denied

---

does not address any purported impairment that is not related to her physical conditions. Pl. Mem. 1-14. Accordingly, only her physical impairments are at issue in this Decision and Order.

Plaintiff's request for review on February 4, 2013. T. 1-7, 21-33. This action followed. Dkt.#1.

The Commissioner now moves for judgment on the pleadings asserting that the ALJ's decision was supported by substantial evidence. Comm'r Mem. (Dkt.#12-1) 16-23. Plaintiff has filed a cross-motion alleging that the ALJ failed to follow the treating physician rule and improperly evaluated Plaintiff's credibility. Pl. Mem. (Dkt. #14) 5-14.

## DISCUSSION

### I. Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### II. Relevant Medical Evidence

#### A. Treating Sources

On July 17, 2009, Dr. Scott Darling evaluated Plaintiff upon complaints of left hip pain. T. 278. Plaintiff exhibited slightly antalgic gait on the left and full range of motion in the hip with some tenderness. Id. Negative straight leg raise was noted, and there was tenderness of the left greater trochanter. Id. X-rays from July 10, 2009 were remarkable for mild joint space narrowing,

3

and revealed no dislocation, fracture, or significant arthritic changes. T. 278, 281. Plaintiff was given an "off work" note for one week, and was prescribed steroids, an injection, and physical therapy. T. 279.

The following month, Plaintiff returned to Dr. Darling for ongoing left hip pain, new right posterior hip pain, and midline lower back pain with radicular symptoms. T. 286. She reported that the corticosteroid injection only helped for three days, and that she was taking ibuprofen as needed. Id. Upon examination Plaintiff walked with normal gait, had point tenderness at the right sacroiliac joint, full range of motion in hips with pain at internal and external rotation of the right hip, and full range of motion in the spine. Straight leg raising test was positive. Id. No tenderness was noted in the greater trochanter on the right. T. 287. Dr. Darling ordered magnetic resonance imaging ("MRI"), physical therapy, and a trial of Flector patches. Id. She was given an off-work note for three weeks regarding lower back pain and right hip pain. Id.

An MRI of the lumbar spine dated August 17, 2009 revealed mild T11/12 and T12/L1 disc degeneration and bulging; mild L3/4 through L5/S1 posterior facet arthrosis; T11/12, T12/L1, L5/S1 disc narrowing; and no central or foraminal stenosis. T. 267-68. Dr. Darling reviewed the MRI results and assessed pain joint pelvic region and thigh; radiculopathy; disc disorder, other and unspecified lumbar region. T. 289. Plaintiff was to pursue a formal course of physical therapy, continue use of the Flector patch, and

was instructed on changing sites of her pelvis and lower back. T. 289-90. She reported that she was out of work, and there were no light duty jobs available at that time. T. 290.

Plaintiff attended four physical therapy sessions in August and September, 2009, but did not attend follow-up sessions. Physical therapy goals were not achieved. T. 362.

Plaintiff saw Dr. Darling on September 21, 2009, and stated that her pain was becoming more severe with new radicular symptoms into the left foot, tingling, and paresthesia. Previous medications and prescriptions were not effective, and physical therapy provided no substantial relief. T. 337. She was referred to surgery for possible laminectomy and microdiscectomy, and was given a short supply of Darvocet and ibuprofen. Physical therapy was stopped as it was not helping her at that time. T. 337-38.

On January 13, 2010, Plaintiff saw Dr. Darling upon complaints of lower back and glute pain after a fall. T. 367. She rated her pain at 7/10 that was aggravated by sitting and lying down. Id. Examination revealed normal gait, normal spinal contour, tenderness to palpation over right sacroiliac joint and sacrum into the coccyx, limited range of motion in the spine due to pain and spasms, positive straight leg raising bilaterally, and negative slump test. T. 367. Plaintiff had full range of motion in the hips. T. 368. An x-ray showed no fracture, significant arthritic changes, or spondylolisthesis. T. 368.

Plaintiff followed up one week later, reporting that her pain had improved to 3/10, though it still occurred at the right

5

sacroiliac joint. T. 370. Examination revealed tenderness over the right sacroiliac joint, limited motion in the lumbar spine, positive straight leg raising bilaterally, absent deep tendon reflexes on the right, full range of motion in the hips, normal gait, and full strength in the lower extremities. T. 370-71. She was diagnosed with right sacroiliac joint sprain and disc disorder of the lumbar region. T. 371. She was noted to have improved significantly, and was recommended physical therapy. Id. At a follow-up appointment in February, Plaintiff stated that she was unable to start physical therapy because she had moved. She complained of continued radicular pain, and examination findings were unchanged. T. 373-74.

In a Spinal Impairment Questionnaire dated September 24, 2011, Dr. Darling noted that he treated Plaintiff three times per year and diagnosed her with pain the hips, rule out labral tear (MRI pending); disc herniation, lumbosacral spine; and trochanteric bursitis, right and left. T. 432. His findings included limited range of motion, tenderness over the lumbar spinous process at L3 through S1, absent right patellar reflexes, positive straight leg raising on the left, and tenderness over both hips. He noted no muscle spasm, sensory loss, muscle atrophy, weakness, or abnormal gait. T. 432-33. Dr. Darling cited to the August, 2009 MRI in support of his findings. T. 434. Medications were prednisone, Darvocet, ibuprofen, and Flector patches. Plaintiff was referred for neurosurgery, lab work, and physical therapy. T. 436.

6

Dr. Darling opined that Plaintiff was in constant pain and would be able to sit for two hours in an eight-hour day, stand/walk for four hours, and that she would need to get up from the sitting position every two hours for approximately 20 minutes. T. 435. She could occasionally lift and carry up to 20 pounds. T. 436. She could not push, pull, bend, or stoop on a sustained basis. T. 438. Plaintiff's pain would periodically interfere with attention and concentration, she would need to take unscheduled breaks every four hours for approximately 20 minutes, and she was capable of low work stress. T. 436-37. Dr. Darling did not indicate whether Plaintiff would be able to do a full time competitive job that requires activity on a sustained basis, but noted that she had good days and bad days, and would likely be absent from work about two to three times per month. T. 437.  He noted that emotional factors contributed to Plaintiff's symptoms because she was non-compliant with treatment. T. 436. The doctor stated that her pain was "moderate level, not debilitating." T. 437.

### B. Consultative Examinations

Plaintiff was consultatively examined by Dr. Kathleen Kelley on February 5, 2010. T. 345-49. Plaintiff reported problems with her back and hip and a history of depression. T. 345. On examination, her gait and station were normal with a 3/4 squat. T. 347. She was obese, and complained of pain in the supine position. Remarkable findings in the musculoskeletal and neurologic examination included limited motion of the lumbar spine, positive straight leg raising, and decreased deep tendon reflexes in the

7

right patella and ankle. T. 347-48. Other results were normal, including in the extremities, fine motor activity of the hands, and the thoracic and cervical spine. T. 348.

Activities of daily living included cooking seven days per week, cleaning four days per week, doing laundry three days per week, and shopping twice per week. T. 346. Plaintiff needed help with vacuuming and carrying. Id. She performed self-care. For hobbies, she watched television, listened to the radio, read, and rebuilt old computers. Id.

Dr. Kelley assessed degenerative disc disease of lower thoracic and lumbar spine as described, noting that Plaintiff did not describe radiculopathy, weakness, or bladder/bowel compromise. Id. The consultant opined that kneeling, squatting, crawling, and climbing stairs repetitively would require comfort breaks, and that Plaintiff "should be leery of working around heights of [sic] heavy equipment." T. 349. Bending or twisting repetitively of the lumbar spine would require comfort breaks, and the remaining limitations were psychiatric in nature. Id.

### III. **Non-Medical Evidence**

Plaintiff was 47 years-old on the alleged onset date of disability, had a general equivalency diploma, and previously worked as a delivery driver, stocker, and retail sales associate. T. 176-81. She testified at her disability hearing that she stopped working because she required excessive breaks. T. 57-58. She estimated that she could stand for 30 minutes, walk for a couple of blocks, and sit for 30 minutes to an hour before she would need to

8

get up and move around. T. 59-60. She told the ALJ that she would lie down on the couch or in a reclining chair for three or four hours per day, five or six days per week when her symptoms were bad. T. 61. Plaintiff prepared mostly frozen foods, and could not wash dishes for very long. T. 61-62. She could do a little sweeping, could not vacuum, and had trouble doing laundry. T. 62. She reported difficulty with stairs. Id. Plaintiff testified that she discontinued physical therapy because it "hurt too much." T. 63. Injections provided relief for about six hours, and she took ibuprofen which did not help. She stated that she was allergic to the glue in her Flector patches. Id.

**IV. The decision of the Commissioner was supported by substantial evidence.**

    **A.    Treating Physician Rule**

Plaintiff first contends that the ALJ failed to appropriately weigh the opinion of Plaintiff's treating source, Dr. Darling. Pl. Mem. 5.

Under the treating physician rule, the medical opinion of a claimant's treating physician will be given "controlling" weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Green-Younger, 335 F.3d at 106. Medically acceptable clinical and laboratory diagnostic techniques include consideration of "a patient's report of complaints, or

history, [a]s an essential diagnostic tool." Id., 335 F.3d at 107 (internal quotation omitted).

In evaluating the opinion of Dr. Darling, the ALJ noted that the doctor's responses to the Spinal Impairment Questionnaire were "somewhat inconsistent," however his more specific responses reflected a sedentary work capability and that the statement, read as a whole, was consistent with the sedentary exertion level. T. 27-28.

At the outset, it is unclear whether Plaintiff is correct as to whether the ALJ failed to afford to Dr. Darling's opinion controlling weight. In his decision, the ALJ discussed the Spinal Impairment Questionnaire and treatment notes at length before concluding that Dr. Darling's opinion was, "as a whole . . . consistent with at least a sedentary work capacity." T. 28. This statement suggests that the ALJ, to some extent, relied upon Dr. Darling's opinion in reaching his residual functional capacity determination rather than discounting it.

The Spinal Impairment Questionnaire indicated that Plaintiff could sit for up to two hours and stand or walk for up to four, while occasionally lifting and carrying up to 20 pounds. T. 27. She would need to get up from the seated position and move around for 20 minutes every two hours,[2] and would need to take breaks every

---

[2] The ALJ stated that "Dr. Darling's responses on his medical source statement form are somewhat inconsistent, but his more specific and, hence, inherently more reliable responses reflect a sedentary work capability." T. 27. The Court sees no conflict between the ability to sit for up to two hours and having to change positions

four hours before returning to work. T. 28. Significantly, the doctor stated that Plaintiff's pain was "moderate" and "not debilitating." Id.

The ALJ also considered the opinion of the consultative examiner. Although Dr. Kelley noted some abnormal findings on physical examination, the limitations assessed were comfort breaks with kneeling, squatting, crawling, climbing stairs repetitively, and bending or twisting repetitively of the lumbar spine, with no other limitations noted. Id. To the extent the ALJ relied upon Dr. Kelley's opinion as to Plaintiff's functional limitations, he was entitled to do so. See, e.g., Mongeur v. Heckler, 722 F.2d 1033 (2d Cir. 1983) (a consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision); accord Babcock v. Barnhart, 412 F.Supp.2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." (quotation omitted)).

Here, the ALJ correctly found that both of these opinions were consistent with sedentary work, which involves lifting no more than 10 pounds at a time and involves sitting with a certain amount of walking and standing. T. 27-28; see 20. C.F.R. § 404.1567. Accordingly, any purported error the ALJ's failure to assign a specific weight to Dr. Darling's opinion was harmless and does not

---

from sitting every two hours.

11

necessitate remand in light of the consistent record evidence, which the ALJ carefully and thoroughly evaluated. See Arguinzoni v. Astrue, No. 08-CV-6356, 2009 WL 1765252, *9 (W.D.N.Y. June 22, 2009) (ALJ's failure to assign weight to medical opinions was harmless; "[t]he ALJ engaged in a detailed discussion of the medical opinions in the record and his determination that the plaintiff was not disabled does not conflict with the medical opinions"); Pease v. Astrue, No. 06-CV-0264 2008 WL 4371779, *8 (N.D.N.Y. Sept. 17, 2008) (ALJ's failure to comment on the weight of the evidence was harmless error where there was a detailed summary and analysis of reports and records of treating and examining physicians).

In a related argument, Plaintiff contends that the ALJ failed to include a sit/stand option in the residual functional capacity finding. Although the record contains evidence that Plaintiff alleged pain in sitting, standing, walking, and lying down, the record does not establish that sit/stand option was required. T. 58-60, 240, 335, 345, 348.

First, Plaintiff's allegations of pain were inconsistent throughout the record. Despite her statements to the consultative examiner and in her disability forms that she experienced pain while lying down, she testified at her hearing that she tried to lie down as much as possible to relieve her pain. T. 59-60, 240, 348. Second, the consultative examiner did not assess limitations in sitting, standing, or walking. T. 349 (noting "no other obvious

12

limitations on exam"). Finally, the RFC as written without a sit/stand option is supported by Dr. Darling's opinion that Plaintiff could sit for two hours before changing position and is consistent with the requirements of sedentary work. See SSR 96-9p, at *6 (noting that sedentary work requires sitting for "approximately 2-hour intervals" between breaks).

For all of these reasons, the ALJ's decision did not run afoul of the treating physician rule and the RFC determination was supported by substantial evidence in the record.

### B. Credibility Assessment

Next, Plaintiff alleges that the ALJ did not apply the appropriate standards set forth in SSR 96-7p and 20 C.F.R. § 404.1529 in assessing Plaintiff's credibility. Pl. Mem. 10-14.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as

13

the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

The ALJ found that Plaintiff's subjective complaints were inconsistent with the previously-determined residual functional capacity assessment. T. 31.

Despite using the frowned-upon boilerplate language in his decision, the ALJ's credibility determination was nonetheless supported by substantial evidence. He explicitly considered many of

the factors outlined in the regulations, including, but not limited to: Plaintiff's treatment with over-the-counter medication, non-compliance with prescribed treatment, and activities of daily living. T. 31; see SSR 96-7p. He also noted Plaintiff's conflicting testimony and inconsistencies between her reports and the treatment notes from her physician. Id. Moreover, Plaintiff did not follow-up with specialist to determine whether she would be a candidate for surgery, despite her allegations that physical therapy was resulting in additional pain. T. 32. The ALJ further reasoned that her allegations were unsupported by the treating examining and medical source opinions, and pointed out that Plaintiff's testimony indicated that she felt incapable of performing sedentary work because of lack of training and job availability, but did not know how her pain would have prevented her from performing a desk job. T. 32, 42-73. To that end, the ALJ also observed that Dr. Darling, Plaintiff's treating physician, "clearly felt the claimant was capable of performing some work activity . . . [H]e had discussed with her 'working light duty at work.' The claimant reported that no light duty was available to her." T. 26.

In assessing Plaintiff's credibility, the ALJ considered the medical evidence, Plaintiff's statements concerning her symptoms and alleged functional limitations, and her activities of daily living. The credibility determination was therefore proper. See Diakogianis v. Astrue, 975 F.Supp.2d 299, 318-19 (W.D.N.Y. 2013) (determining the ALJ's credibility assessment was supported by

15

substantial evidence where the ALJ assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite the use of the boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity"); Abdulsalam v. Comm'r, No. 12-CV-1632, 2014 WL 420465, at *7 (N.D.N.Y. Feb. 4, 2014) (same).

The Court finds that the ALJ's credibility determination was proper as a matter of law and supported by substantial evidence in the record.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#12) is granted, and Plaintiff's cross-motion (Dkt.#13) is denied, and the complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 29, 2015